**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **STEWARD HEALTH CARE SYSTEM LLC, et al.,** | **Case No. 24-90213 (CML)** |
| **Debtors.[1]** | **(Jointly Administered)** |
| | **Adv. Pro. No. 26-03094 (CML)** |
| **MARK KRONFELD, AS TRUSTEE OF THE SHC CREDITOR LITIGATION TRUST,** | |
| **Plaintiff,** | |
| **vs.** | |
| **TENET HEALTHCARE CORPORATION,** | |
| **Defendant.** | |

**TENET HEALTHCARE CORPORATION'S REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

---

[1] A complete list of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward.  The Debtors' service address for these Chapter 11 Cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.       STEWARD'S RESPONSE CONFIRMS THE AMENDED COMPLAINT
         FAILS TO ALLEGE A LACK OF REASONABLY EQUIVALENT VALUE ............. 2

         A.       Purely Based on the Amended Complaint and the APA, Steward
                  Received Reasonably Equivalent Value ................................................... 4

         B.       The Trustee Cannot Allege a Lack of Reasonably Equivalent Value by
                  Pleading That Steward's Projections Were Wrong ................................... 5

         C.       The Opposition Weighs the Full Consideration Tenet Received Against a
                  Fraction of the Consideration Tenet Gave .............................................. 9

II.      THE MATERIALS TENET CITES ARE WITHIN JUDICIAL NOTICE .................... 11

         A.       The Tax Forms Are Judicially Noticeable and Support Dismissal ..................... 12

         B.       The Delaware Opinions Are Before the Court and Support Dismissal ............... 13

         C.       The First Day Term Sheet Is Judicially Noticeable ........................................... 14

III.     THE AMENDED COMPLAINT FAILS TO ADEQUATELY ALLEGE
         INSOLVENCY ...................................................................................................... 15

         A.       Plaintiff Is Judicially Estopped from Contesting Insolvency as to Tenet ........... 15

         B.       Plaintiff Fails to Plead That the APA Caused Steward's Financial
                  Condition .......................................................................................................... 17

IV.      THE DISALLOWANCE CLAIM SHOULD BE DISMISSED ................................... 20

V.       DISMISSAL SHOULD BE WITH PREJUDICE ........................................................ 20

CONCLUSION ................................................................................................................. 21

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acis Cap. Mgmt. LP v. Simek*,
  2025 WL 1199386 (N.D. Tex. Apr. 24, 2025) ......................................................................18

*Ambler v. Williamson Cnty.*,
  2021 WL 769667 (W.D. Tex. Feb. 25, 2021) ........................................................................13

*Anglo-Dutch (Tenge) L.L.C. v. Walston*,
  172 F.3d 868 (5th Cir. 1999) ................................................................................................13

*ASARCO LLC v. Americas Mining Corp.*,
  396 B.R. 278 (S.D. Tex. 2008) .......................................................................................2, 7, 8

*Aventa Learning, Inc. v. K12, Inc.*,
  830 F. Supp. 2d 1083 (W.D. Wash. 2011) ..............................................................................8

*Bavely v. Panini Am., Inc.*,
  2023 WL 12098401 (E.D. Tex. June 7, 2023) ................................................................12, 15

*Brewster v. Dretke*,
  587 F.3d 764 (5th Cir. 2009) ................................................................................................21

*Cooper v. Paragon Sys., Inc.*,
  2008 WL 4187942 (S.D. Miss. Sept. 5, 2008) ......................................................................19

*In re Davidson*,
  947 F.2d 1294 (5th Cir. 1991) ..............................................................................................13

*In re Deepwater Horizon*,
  934 F.3d 434 (5th Cir. 2019) ..........................................................................................12, 13

*Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
  579 F. Supp. 3d 933 (S.D. Tex. 2022) ..................................................................................12

*Ferrer v. Chevron Corp.*,
  484 F.3d 776 (5th Cir. 2007) ................................................................................................19

*In re Hinsley*,
  201 F.3d 638 (5th Cir. 2000) ..................................................................................................8

*In re Houston Drywall, Inc.*,
  2008 WL 2754526 (Bankr. S.D. Tex. July 10, 2008) ............................................................18

*In re IFS Fin. Corp.*,
  2008 WL 4533713 (Bankr. S.D. Tex. Oct. 2, 2008) ..............................................................20

*Jefferson v. ZB, Nat'l Ass'n*,
  2025 WL 473729 (S.D. Tex. Jan. 27, 2025), *report and recommendation
  adopted*, 2025 WL 902449 (S.D. Tex. Mar. 24, 2025) ..........................................................11

*In re Jeffrey Bigelow Design Grp., Inc.*,
  956 F.2d 479 (4th Cir. 1992)..................................................................................................9

*In re La. Pellets, Inc.*,
  838 F. App'x 45 (5th Cir. 2020)..............................................................................................7

*LandAmerica Fin. Grp., Inc. v. S. Cal. Edison Co.*,
  525 B.R. 308 (E.D. Va. 2015) ...........................................................................................9, 11

*In re Life Partners Holdings, Inc.*,
  926 F.3d 103 (5th Cir. 2019)................................................................................................20

*U.S. ex rel. Long v. GSDMIdea City, L.L.C.*,
  798 F.3d 265 (5th Cir. 2015) ...............................................................................................16

*Luv'n Care, Ltd. v. Jackel Int'l Ltd.*,
  502 F. Supp. 3d 1106 (W.D. La. 2020) ................................................................................16

*In re Maple Heights Invs., LLC*,
  2025 WL 610859 (Bankr. N.D. Tex. Feb. 21, 2025) ..............................................................7

*Mason v. Dillon Invs., LLC*,
  2023 WL 6702602 (E.D. Tex. Oct. 11, 2023)......................................................................14

*In re Miller*,
  347 B.R. 48 (Bankr. S.D. Tex. 2006)....................................................................................17

*Mountaineer Coal Co. v. Liberty Mut. Ins. Co.
  (In re Mountaineer Coal Co.)*, 247 B.R. 633 (Bankr. W.D. Va. 2000) .................................20

*Nix v. Major League Baseball*,
  62 F.4th 920 (5th Cir. 2023)................................................................................................20

*Nix v. U.S.*,
  2018 WL 8244925 (E.D. Tex. Dec. 21, 2018) .....................................................................12

*Nord Serv., Inc. v. Palter*,
  548 F. Supp. 2d 366 (E.D. Tex. 2008) .................................................................................12

*Okpobiri v. Experian Info. Sols., Inc.*,
   2025 WL 1270299 (S.D. Tex. Apr. 18, 2025), *report and recommendation adopted*, 2025 WL 1266951 (S.D. Tex. May 1, 2025)..............................................................11

*In re Palm Beach Fin. Partners, L.P.*,
   598 B.R. 885 (Bankr. S.D. Fla. 2019), *aff'd sub nom. Mukamal v. Nat'l Christian Charitable Found., Inc.* 616 B.R. 189 (S.D. Fla. 2020).........................................18

*In re PennySaver USA Publ'g, LLC*,
   587 B.R. 445 (Bankr. D. Del. 2018)..............................................................................20

*In re Pioneer Home Builders, Inc.*,
   147 B.R. 889 (Bankr. W.D. Tex. 1992) .........................................................................18

*Platt as Co-Trs. of Platt Fam. Artwork Tr. v. Michaan*,
   695 F. Supp. 3d 420 (S.D.N.Y. 2023) ...........................................................................13

*In re Porras*,
   312 B.R. 81 (Bankr. W.D. Tex. 2004) ...........................................................................14

*Reed v. City of Arlington*,
   650 F.3d 571 (5th Cir. 2011)....................................................................................15, 17

*Sec. Indus. Ins. Co. v. U.S.*,
   702 F.2d 1234 (5th Cir. 1983).......................................................................................13

*In re Senior Care Ctrs., LLC*,
   2023 WL 7137097 (Bankr. N.D. Tex. Oct. 30, 2023), *report and recommendation adopted*, 2024 WL 3771443 (N.D. Tex. Aug. 13, 2024) .......................9, 11

*In re Strange*,
   664 B.R. 143 (Bankr. W.D. Tex. 2024) ...........................................................................7

*In re Super. Crewboats, Inc.*,
   374 F.3d 330 (5th Cir. 2004).........................................................................................16

*Tansey v. McGrail*,
   2013 WL 857374 (N.D. Tex. Mar. 7, 2013) ..................................................................14

*In re Terrific Seafoods, Inc.*,
   197 B.R. 724 (Bankr. D. Mass. 1996)............................................................................18

*In re Wisner*,
   2022 WL 4587047 (Bankr. E.D. Tex. Sept. 29, 2022)...................................................15

*Wright v. Transp. Commc'n Union/IAM*,
   2020 WL 7061874 (S.D. Tex. Nov. 5, 2020)..................................................................13

iv

*In re WRT Energy Corp.*,
   282 B.R. 343 (Bankr. W.D. La. 2001) ...............................................................................7, 8

**Statute**

Tex. Bus. & Com. Code § 24.005 ...............................................................................19

**INTRODUCTION**

Tenet sold Steward the real estate, tangible assets, net working capital, and goodwill associated with the Miami Hospitals for $1.1 billion.  The Amended Complaint and APA demonstrate that Steward immediately liquidated the real estate for $925 million and received $100 million of net working capital at closing.  Mot. at 1–2.  The Trustee now seeks to double-dip and collect the full purchase price from Tenet, based on the allegation that "the value of the Hospitals may even have been $0."  Opp. at 2.

The Trustee achieves this dissonance by comparing all of the consideration that Tenet received from the transaction ($1.1 billion) to a subset of the consideration that Tenet put into the transaction (the goodwill alone):  "From the perspective of the 'integrated whole,' at the end of the Tenet Transaction, [Steward] was left with excessive lease obligations, no cash (the cash MPT paid SHC System went to Tenet, of course), and hospital operations that were incapable of generating the returns on which [Steward] based its pricing."  *Id.* at 9.  But the Trustee cannot state a constructive fraudulent transfer claim by refusing to acknowledge any value for the hard assets Tenet provided.  *See* Mot. at 19 (collecting cases).

On the Trustee's theory, Steward could have received the full purchase price in net working capital and sold the real estate for a profit, and the Trustee would still have a claim against Tenet for $1.1 billion because Steward was unable to operate the hospitals profitably:

> The value of the Miami Hospitals to [Steward] was their ability to generate earnings. . . .  Whether or not the Tenet transaction delivered some amount of net working capital to [Steward], it delivered hospitals that provided far less EBITA and EBITDAR than justified their $1.1 billion price tag.

Opp. at 22.

It may be true that the operations of the Miami Hospitals were not profitable after Steward sold off the real estate (Am. Compl. ¶ 18), burdened the hospitals with "overpriced lease

1

payments" (Opp. at 9), implemented insurance contracts that were less profitable than Tenet's (*Id.* at 30), and installed what the Amended Complaint calls an "incompetent hospital manager" at the helm.  Am. Compl. ¶ 2.  It may also be true that after three years of unprofitable operations under those conditions, a bankrupt Steward was unable to sell a small subset of the assets Tenet delivered for more than $10 million.  *Id.* ¶¶ 267–268.  But as Tenet argued in the Motion to Dismiss, those allegations do not suffice to state a claim for constructive fraudulent conveyance because they ignore the value of the non-goodwill assets, they compare operational apples to oranges, and because "[a]ll jurisdictions agree that courts should measure the value of the property transferred and the consideration received at the time of the transfer."  *ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 336 (S.D. Tex. 2008) (citing cases).

The Trustee's other arguments in opposition are similarly misguided and are addressed below.  Notably, the Plaintiff does not dispute that the Miami Hospital sale was an arm's length transaction and that the APA is properly before the Court.  The Plaintiff does not attempt to defend its alternative theory that the $209 million Tenet sub-payment should be avoided as a constructive fraudulent transfer.  And the Plaintiff does not contest that neither it nor the estate performed any valuation of the Miami Hospitals before filing this lawsuit.

The Court should dismiss Steward's claims against Tenet with prejudice because the Trustee cannot fashion a fraudulent transfer out of an arm's length transaction where facts before the Court on the pleadings demonstrate that reasonably equivalent value was exchanged.

## ARGUMENT

I.     **STEWARD'S RESPONSE CONFIRMS THE AMENDED COMPLAINT FAILS TO ALLEGE A LACK OF REASONABLY EQUIVALENT VALUE**

The Amended Complaint alleges that Tenet received $1.1 billion for the sale of the Miami Hospitals, that MPT paid $925 million of that amount, and that Steward paid the remaining $209

million (via an expansion of its ABL facility). Am. Compl. ¶¶ 18, 260. The APA, which the Trustee does ***not*** dispute is properly before the Court on Tenet's Motion to Dismiss, describes the assets that Tenet sold in exchange for that consideration: The real property of the five hospitals, which MPT paid $925 million for (Mot. Ex. 1, APA § 2.1(a)), $100 million of Target Net Working Capital (*id.* at 12), leasehold improvements (*id.* § 2.1(b)), all tangible personal property, including equipment, furnishings, and supplies (*id.* § 2.1(e)), and goodwill (*id.* § 2.1(q)), among other assets. The Amended Complaint alleges that MPT received the real property, and that Steward received all the other assets conveyed by Tenet pursuant to the APA. Am. Compl. ¶ 18.

The Amended Complaint includes zero allegations regarding the value of any of the assets Tenet delivered to Steward other than the value of goodwill. The Trustee's opposition brief does not dispute this. Instead, it argues that the value of the real estate, net working capital, and other assets Steward received are irrelevant to whether Steward received reasonably equivalent value because Steward allegedly evaluated the purchase price as a multiple of projected EBITDA. *See* Opp. at 22. Aside from being contrary to established law on how reasonably equivalent value must be analyzed, the Trustee's arguments regarding the value of goodwill are themselves deficient because they are pure hindsight analysis of Steward's poor financial performance, and not contemporaneous evidence of fair value.

This analysis is particularly flawed given the allegations in the Amended Complaint of systematic mismanagement and self-dealing by the executives who operated the Miami Hospitals for Steward. By its opposition brief, the Plaintiff asks the Court to ignore the value of the real estate, net working capital, and tangible property and bless a constructive fraudulent conveyance claim based on the post-sale performance of a business that the Amended Complaint alleges was run by self-interested executives who mismanaged Steward's hospitals.

The Court should dismiss the claims against Tenet because the Trustee has not and cannot allege a lack of reasonably equivalent value at the time of the sale.

### A. Purely Based on the Amended Complaint and the APA, Steward Received Reasonably Equivalent Value

Facts that are before the Court demonstrate that Tenet conveyed in excess of $1.025 billion in value at closing, in exchange for $1.1 billion. Even if the operations of the Miami Hospitals were worthless, as the Trustee alleges, Tenet delivered reasonably equivalent value as a matter of law, and the constructive fraudulent conveyance claim must be dismissed. *See* Mot. at 15–16.

*First*, the Trustee does not dispute that the APA is before the Court.[2] Because the APA includes a Target Net Working Capital amount of $100 million,[3] if Tenet had delivered the Miami Hospitals to Steward with less than $100 million of actual net working capital, the Purchase Price under the APA would have been reduced.[4] As explained below, the Court may take judicial notice of the fact that the Delaware Supreme Court affirmed a judgment in Tenet's favor that Tenet delivered Actual Net Working Capital in excess of the $100 million target in the APA. But even without judicial notice, the fact that the Trustee alleges the Purchase Price was $1.1 billion, without a negative adjustment, shows that Tenet delivered the $100 million of net working capital it was obligated to deliver under the APA.

*Second,* the Amended Complaint alleges that "On or about July 31, 2021, MPT funded $925 million into an escrow account established by SHC System, and SHC System deposited

---

[2] In fact, Plaintiff cites to it in the Opposition brief. Opp. at 9; s*ee also id*. at 19 n.6; *id*. at 14-15 (describing documents Trustee challenges).

[3] *See* Mot. Ex. 1, APA at 12 ("Target Net Working Capital" set at $100,000,000).

[4] *See id.* at 11 ("'***Purchase Price***' means an amount equal to (a) $1,100,000,000, plus (b) the amount, if any, by which the Actual Net Working Capital exceeds the Target Net Working Capital, minus (c) the amount, if any, by which the Target Net Working Capital exceeds the Actual Net Working Capital."); *id*. § 2.5(c)-(d) (describing the procedure for adjusting the Purchase Price based on the amount of Actual Net Working Capital delivered at closing).

$208.9 million.  MPT had no control over that money after it sent it because it became SHC System's money."  Am. Compl. ¶ 255.  It further alleges that the purpose of MPT's payment was "to partially discharge the Steward entities' obligation to purchase the Miami Hospitals."  *Id*. ¶ 254.  In exchange, Steward assigned to MPT the right to purchase the "land and other real estate for the Miami Hospitals."  *Id*.; *see also* Mot. Ex 1, APA § 10.5.

These facts alone demonstrate that Steward received $1.025 billion at closing, ***plus*** the value of the operations, leasehold improvements, equipment, inventories, and other assets Tenet conveyed.  In the face of these facts, the Trustee's allegations that the hospitals were "worthless" are not plausible.  *See* Mot. at 15–16.

**B.     The Trustee Cannot Allege a Lack of Reasonably Equivalent Value by Pleading That Steward's Projections Were Wrong**

The Trustee's response to the above math is to offer blinders to the Court.  The Trustee would have the Court ignore the value of the real estate and net working capital Tenet conveyed and focus exclusively on the allegations that Steward internally justified the purchase price based on projections of the hospitals' financial performance.  Am. Compl. ¶¶ 260–261.  This framing of the issue of reasonably equivalent value is precluded by a uniform body of case law, inconsistent with the facts before the Court on the pleadings, and insufficiently pleaded in the Amended Complaint.

The Amended Complaint's theory that Steward overpaid for the Miami Hospitals is based on a comparison of Steward's internal projections (which the Trustee admits were "entirely fanciful") to the Miami Hospitals' alleged historical and post-sale financial performance.  *See id*. ¶¶ 257–270.  The Trustee doubles down in the Opposition, arguing that a multiple-of-earnings analysis is the only relevant lens to assess reasonably equivalent value, despite the fact that Tenet also conveyed real estate, net working capital, and equipment.  "The historical EBITDAR could

5

not justify the $1.1 billion price tag, and the projected EBITDAR was drastically overstated. Thus, SHC System drastically overpaid." Opp. at 8. If a low EBITDAR alone could justify a constructive fraudulent transfer case under TUFTA, Texas companies would be unable to sell asset-heavy businesses without becoming a non-consensual guarantor of the purchaser's business performance.

The Trustee goes so far as asserting that the actual value Tenet conveyed in the form of net working capital is irrelevant to the question of how much value Tenet conveyed:

> [E]ven if SHC System did receive $100 million in net working capital, that says nothing about the value of the Miami Hospitals' business, which depends on its earnings, and as alleged in the FAC, whatever the net working capital, the Hospitals' business actually lost money and was a drain on SHC System.

*Id.* at 4.

In the Trustee's view, Steward could have sold the real estate for $2 billion or received the full purchase price in net working capital, and the Trustee would still have a claim for $1.1 billion against Tenet because Steward was unable to operate profitably after closing. That's not the law, and for good reason. If courts could disregard actual value conveyed, then TUFTA would be a statutory money-back guarantee on every transaction for unsuccessful businesses. The effects of such a ruling would be significant—businesses would be incentivized to take long-shot risks with their post-closing business plans because if the business failed, they could recapture the purchase price as a constructive fraudulent transfer.

The Trustee attempts to justify its reliance on financial performance by arguing that here, EBITDA is the only relevant metric because Steward allegedly used a multiple of EBITDA to assess the transaction:

> The value of the Miami Hospitals to SHC System was their ability to generate earnings. That is what SHC System based its pricing on (*see supra* at 8), and that is what any buyer of operating hospitals would base their pricing on. Whether or not the Tenet Transaction delivered some amount of net working

capital to SHC System, it delivered hospitals that provided far less EBITDA and EBITDAR than justified their $1.1 billion price tag.

*Id.* at 22.

This argument fails.  As a preliminary matter, the Trustee does not respond to the fact that the allegations in the Amended Complaint on this point literally don't add up.  *See* Mot. at 21 (demonstrating that 7.7x of a $156 million projection would yield a $1.2 billion price).  Moreover, the Trustee concedes that Steward's projections were "entirely fanciful."  Am. Compl. ¶ 261.  The Court cannot find that Tenet failed to deliver REV because the purchaser's internal reasoning for the purchase was incorrect; instead, the analysis must be based on whether Tenet objectively conveyed reasonably equivalent value in the eyes of a reasonable creditor.  "Whether the debtor received reasonably equivalent value for the transfer of property is determined from a reasonable creditor's perspective and at the time of the transaction, rather than in hindsight."  *In re Maple Heights Invs., LLC*, 2025 WL 610859, at *22 (Bankr. N.D. Tex. Feb. 21, 2025); s*ee also In re Strange*, 664 B.R. 143, 160 (Bankr. W.D. Tex. 2024) (same); *In re WRT Energy Corp.*, 282 B.R. 343, 407 (Bankr. W.D. La. 2001) ("[F]air market value of what the debtor gave and received must be valued objectively and from the perspective of the debtor's creditors, without regard to the subjective needs or perspectives of the debtor or transferee.").

By framing the REV question as a hindsight analysis of Steward's projections measured against Steward's post-closing performance, the Trustee's claim runs directly into binding caselaw prohibiting the use of post-sale financial performance to plead a lack of reasonably equivalent value.  "We cannot use hindsight to recalibrate the risk—or the potential reward—of the debtor's investment."  *In re La. Pellets, Inc.*, 838 F. App'x 45, 50 (5th Cir. 2020).  *See also ASARCO*, 396 B.R. at 336 (collecting cases) ("All jurisdictions agree that courts should measure the value of the property transferred and the consideration received at the time of the transfer.");

*WRT Energy*, 282 B.R. at 404  ("Whether a debtor received reasonably equivalent value must be measured at the time the debtor made the challenged transfer."); *In re Hinsley*, 201 F.3d 638, 644 (5th Cir. 2000) ("Value is determined as of the date of transfer."); Mot. at 24, n.24.[5]

This rule is especially apt here, because the Miami transaction was a carve-out asset sale that excluded Tenet's payor contracts, and Steward immediately monetized the real estate and entered onerous lease obligations.  *See* Opp. at 30 (acknowledging lower "reimbursement terms in SHC System's insurance contracts"); *id.* at 9 (acknowledging Steward burdened the operations with "overpriced lease obligations.").   The reimbursement terms in a hospital's insurance contracts are a central variable determining a hospital's revenue.   And overpriced lease obligations directly affect a hospital's bottom line.  Tenet had no control over Steward's post-closing business decisions, and the Trustee cannot hold Tenet liable for Steward's poor performance operating a subset of the assets Tenet delivered.   The Trustee's allegations demonstrate Steward's post-sale financial performance is a wholly inappropriate lens to measure the value of the assets Tenet delivered pursuant to the APA and a measure that, if adopted, would significantly constrain a company's ability to sell its assets.   The Trustee's efforts to compare apples to oranges cannot support a claim that Tenet failed to deliver reasonably equivalent value to Steward.

---

[5] Moreover, even contemporaneous analyses of earnings are less reliable measures of reasonably equivalent value than other methodologies available to the Court because EBITDA is a discretionary non-GAAP metric subject to adjustments like the allocation of fixed overhead expenses. *See Aventa Learning, Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083, 1101 (W.D. Wash. 2011) ("The determination of EBITDA is not an exact science, and can be affected by a range of accounting and other factors within [a party's] discretion."); *ASARCO*, 396 B.R. at 352 ("[I]n valuing this company, the market multiples approach is not as reliable a methodology as performing a discounted cash flow analysis or the stock price valuation.").

### C. The Opposition Weighs the Full Consideration Tenet Received Against a Fraction of the Consideration Tenet Gave

The Amended Complaint contains no allegations of the value of the non-goodwill assets Tenet conveyed at closing. This failure mandates dismissal. *See* Mot. at 18–19 (collecting cases). The Trustee cannot state a claim for constructive fraudulent conveyance while ignoring large categories of consideration Tenet provided in exchange for the purchase price.

The Amended Complaint alleges that MPT's $925 million payment served "to partially discharge the Steward entities' obligation to purchase the Miami Hospitals." Am. Compl. ¶ 254. That represented a $925 million benefit to Steward that must be included in the calculation of reasonably equivalent value. *See In re Senior Care Ctrs., LLC*, 2023 WL 7137097, at *15 (Bankr. N.D. Tex. Oct. 30, 2023) (concluding that reasonably equivalent value includes when a debtor receives an indirect discharge of indebtedness, as occurred here via MPT's $925 million payment), *report and recommendation adopted*, 2024 WL 3771443 (N.D. Tex. Aug. 13, 2024); *In re Jeffrey Bigelow Design Grp., Inc.*, 956 F.2d 479, 484–85 (4th Cir. 1992) (holding that "if the giving of the consideration to the third person otherwise confers an economic benefit upon the debtor, then the debtor's net worth has been preserved"). Courts regularly reject attempts by trustees to assert constructive fraudulent transfer claims premised on disregarding consideration they receive. *See Senior Care Centers*, 2023 WL 7137097, at *15–16; *Bigelow Design*, 956 F.2d at 484–85; *LandAmerica Fin. Grp., Inc. v. S. Cal. Edison Co.*, 525 B.R. 308, 315–16 (E.D. Va. 2015).

The claim against Tenet is untenable because the Trustee includes the real estate when evaluating what Tenet was paid, seeking the entire $1.1 billion purchase price, while ignoring the real estate (and the MPT payment) while evaluating what Steward received:

> From the perspective of the "integrated whole," at the end of the Tenet Transaction, SHC System was left with excessive lease obligations, no cash (the

9

> cash MPT paid SHC System went to Tenet, of course), and hospital operations that were incapable of generating the returns on which SHC System based its pricing.

Opp. at 9.

This is incompatible with the Trustee's claim seeking the full $1.1 billion purchase price. If the Court were to look solely at what Steward was left with at the end of the day (thereby ignoring the real estate), it must also look at what Steward gave up at the beginning of the day and ignore $925 million of the purchase price. All Steward gave up, per the Amended Complaint, were (a) a promise to pay back its lender $209 million and (b) a lease obligation to MPT. Am. Compl. ¶¶ 18, 255. Neither of these allegations can support a claim against Tenet.

 ***First,*** Steward's lease with MPT cannot be imputed to Tenet as a matter of law. Tenet was not a party to the lease. *Id*. ¶ 254 ("SHC System and MPT's subsidiaries entered into an agreement about the financing (the 'Miami Steward-MPT Agreement')."). And, according to the Amended Complaint, MPT's payment to Steward was not an advance on overpriced rent; it was to purchase the real estate from Tenet: "The MPT subsidiaries agreed to pay $900 million of the purchase price (plus $25 million in acquisition expenses) ***to partially discharge the Steward entities' obligation to purchase the Miami Hospitals.***" *Id*. (emphasis added). The Amended Complaint acknowledges that the lease was not part of the APA and that Tenet was not a party to the lease. *Id*. The MPT sale-leaseback was a separate transaction from the APA and is how Steward chose to monetize some of the assets Tenet provided pursuant to the APA. The Trustee's argument is akin to a home purchaser claiming the interest on an adjustable-rate mortgage was part of the purchase price. Moreover, the estate settled its claims against MPT related to the lease, further demonstrating its irrelevance to evaluating whether Steward received REV under the APA. Final Order Approval Global Settlement with Medical Properties Trust, at 18, 40, *In re Steward Health Care Sys. LLC,* No. 24-90213 (Bankr. S.D. Tex. Sept. 18, 2024) Dkt. No. 2610.

***Second***, in exchange for the $209 million, Steward received over $100 million in net working capital. *See supra* at Mot. Ex. 1, APA at 11–12; Mot. at 14–15. The Amended Complaint also alleges that Steward achieved a net positive EBITDAR of over $121 million in the two full years it operated in Miami. Am. Compl. ¶ 265. Thus, even accepting the Trustee's view of the world, in which post-sale performance is relevant to reasonably equivalent value, and ignoring the real estate Tenet delivered, Steward received more than it paid. The Amended Complaint fails to assert a plausible claim against Tenet whether the real estate is included or not.

But more fundamentally, this is the wrong way to look at the transaction, because Tenet never sold Steward the non-real-estate assets for $209 million. Tenet sold the whole bundle of sticks for $1.1 billion, and Steward decided to sell the real estate to MPT for $925 million. *See Senior Care Centers*, 2023 WL 6519756, at *14 ("[I]n analyzing value in this context, one must look at a transaction or series of transactions as an integrated whole."); *LandAmerica*, 525 B.R. at 315–16 (rejecting constructive fraudulent transfer claim resting on one portion of a multi-party transaction).

## II.    THE MATERIALS TENET CITES ARE WITHIN JUDICIAL NOTICE

Plaintiff's objections to the materials Tenet references in the Motion are flawed. Opp. at 2. The Court "may rely on evidence outside the complaint, without converting the Rule 12(b)(6) motion into a motion for summary judgment, if that evidence is either (a) a document attached to the Rule 12(b)(6) motion, referred to in the complaint, and central to the plaintiff's claim; or (b) a matter subject to judicial notice under Federal Rule of Evidence 201." *Okpobiri v. Experian Info. Sols., Inc.*, 2025 WL 1270299, at *2–4 (S.D. Tex. Apr. 18, 2025) (taking judicial notice of defendants' attachments and granting motion to dismiss), *report and recommendation adopted*, 2025 WL 1266951 (S.D. Tex. May 1, 2025); *Jefferson v. ZB, Nat'l Ass'n*, 2025 WL

473729, at *2, *7 (S.D. Tex. Jan. 27, 2025) (same), *report and recommendation adopted*, 2025 WL 902449 (S.D. Tex. Mar. 24, 2025).

Plaintiff challenges Tenet's reference to tax filings, court opinions, filings docketed in this Court, and SEC filings.  Each of these documents is within judicial notice under well-established law.  *See Nix v. U.S.*, 2018 WL 8244925, at *28 n.9 (E.D. Tex. Dec. 21, 2018) (taking judicial notice of tax filings); *In re Deepwater Horizon*, 934 F.3d 434, 440 (5th Cir. 2019) (holding that courts "may take judicial notice of prior court proceedings as matters of public record"); *Bavely v. Panini Am., Inc.*, 2023 WL 12098401, at *5 (E.D. Tex. June 7, 2023) (taking judicial notice of filings in underlying bankruptcy case); *Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 579 F. Supp. 3d 933, 950 & n.2 (S.D. Tex. 2022) (taking judicial notice of "statements within forms filed with the Securities and Exchange Commission").  All such documents are proper for judicial notice as noted in the examples discussed below.  But the Court need not take judicial notice of any of these documents to grant Tenet's Motion to Dismiss, as explained above.

### A.      The Tax Forms Are Judicially Noticeable and Support Dismissal

The Court should take judicial notice of Forms 8594 affirming that the fair market value of the non-real-estate assets Steward received from Tenet exceeded $328 million.[6]  Mot. at 16–17.  Tax Forms 8594 are subject to judicial notice.  *See Nix*, 2018 WL 8244925, at *28 n.9; *Nord Serv., Inc. v. Palter*, 548 F. Supp. 2d 366, 369 nn.3, 4 (E.D. Tex. 2008).  The Trustee responds that what Steward said in the tax forms "does not make it true."  Opp. at 19–20.

At a minimum, however, as the Trustee put it, this affirmation to the IRS shows that Steward "at one time believed that it had received $19 million, or 1.7% of the sales price, worth

---

[6] While Tenet attached its Forms 8594 to its Motion to Dismiss, Dkt. No. 89-2, Steward and Tenet were bound by section 2.5(e) of the APA to submit an "agree[d] upon . . . allocation of the Purchase Price among the various classes of Purchased Assets for tax reporting."  Mot. Ex. 1, APA § 2.5(e).

12

of Other Intangible Assets and Goodwill." *Id.* at 20. But that fact alone undermines Plaintiff's assertions that "[t]he value of the Miami Hospitals to SHC System was their ability to generate earnings." *Id*. at 22; *id.* at 8 (similar). Because that assertion is wholly implausible, the only pretense for accepting the Trustee's myopic multiple-of-earnings REV theory vanishes.[7]

### B.    The Delaware Opinions Are Before the Court and Support Dismissal

The Court can take judicial notice of the fact that the Delaware Courts affirmed an arbitral award against Steward to confirm the fact that Tenet delivered more than $100 million of net working capital to Steward. *See Deepwater Horizon*, 934 F.3d at 440.

The Trustee contends that "the Delaware Decisions do not describe the 'issue' that Tenet wants precluded." Opp. at 21. The Delaware decisions, however, "confirm[]" the arbitrator's "Award" that Tenet had delivered more than the APA's $100 million Target Net Working Capital at closing. *Tenet*, 2023 WL 2778295, at *4. To the extent that the Court has any question regarding the arbitrator's award, which is also judicially noticeable,[8] it determined Tenet had delivered an "Adjusted Final NWC Calculation" of $129,282,415 to Steward at closing. Ex. 5, Forvis Dispute Resolution Rep. for Tenet Healthcare Corp. (Sellers) and Steward Health Care Sys. LLC (Buyers), dated Aug. 25, 2022 (the "Forvis Report"), at 21. The APA itself is sufficient

---

[7] Moreover, the Trustee should be precluded by tax estoppel from challenging its assertions in Steward's tax filings that it allocated less than 2 percent of the APA's value to goodwill. *See Platt as Co-Trs. of Platt Fam. Artwork Tr. v. Michaan*, 695 F. Supp. 3d 420, 445 (S.D.N.Y. 2023) ("[C]ourts cannot, as a matter of policy, permit parties to assert positions in legal proceedings that are contrary to" tax filings submitted to the IRS.); *Sec. Indus. Ins. Co. v. U.S.*, 702 F.2d 1234, 1250–51 (5th Cir. 1983) (noting that a party executed IRS forms taking a tax liability position and could not "renounce" that position in litigation); *In re Davidson*, 947 F.2d 1294, 1297 (5th Cir. 1991) (similar).

[8] *Wright v. Transp. Commc'n Union/IAM*, 2020 WL 7061874, at *2 (S.D. Tex. Nov. 5, 2020) (taking judicial notice of arbitration award), *report and recommendation adopted*, 2020 WL 7060213 (S.D. Tex. Dec. 1, 2020); *Anglo-Dutch (Tenge) L.L.C. v. Walston*, 172 F.3d 868, at *1 (5th Cir. 1999) (same); *see also Ambler v. Williamson Cnty.*, 2021 WL 769667, at *4 (W.D. Tex. Feb. 25, 2021) ("The Fifth Circuit has found it proper to judicially notice . . . arbitration records.").

13

to show that Tenet delivered $100 million of net working capital. *See supra* at I.A. However, materials within judicial notice remove any doubt.

Moreover, the Trustee is barred by issue preclusion from challenging the amount of net working capital Steward received as part of the APA. The Plaintiff argues that it is not "in privity" with Steward, but that is incorrect. "Texas courts have been clear that there is no categorical rule for privity; instead the courts look to the circumstances of each case." *Mason v. Dillon Invs., LLC*, 2023 WL 6702602, at *8 (E.D. Tex. Oct. 11, 2023). Plaintiff and Steward are in privity because "they share an identity of interests in the basic legal right that is the subject of litigation." *Id.*; *Tansey v. McGrail*, 2013 WL 857374, at *7 (N.D. Tex. Mar. 7, 2013) (same).

Plaintiff notes that in *In re Porras*, 312 B.R. 81 (Bankr. W.D. Tex. 2004), the "interests of the creditors being represented by the Trustee in a fraudulent transfer action were not represented in that earlier suit," *id.* at 116, Opp. at 21, but that is not the case here. Both Steward and the Trustee have a "shared identity of interest" in challenging the amount of Net Working Capital that Tenet delivered pursuant to the APA to reduce the amount of the "true-up" Steward owed Tenet. *Mason*, 2023 WL 6702602, at *9 (concluding that a party was "in privity with the Trustee" because of shared identity of interests).

The Trustee cannot challenge the amount of Net Working Capital Tenet delivered after an arbitrator, the Delaware Chancery Court, and the Delaware Supreme Court already ruled on that very question.

### C.     The First Day Term Sheet Is Judicially Noticeable

Steward's first day filings in this Court in its chapter 11 cases calculated a lease basis valuation of the real estate Tenet transferred pursuant to the APA at over $1.12 billion. DIP Term Sheet at 25, *In re Steward Health Care Sys. LLC*, No. 24-90213 (Bankr. S.D. Tex. May 6, 2024), Dkt. No. 46-3. The Trustee would like the Court to ignore that fact.

14

However, the Court can take judicial notice of this document to show what the estate believed the real estate was worth as of May 2024. *See In re Wisner*, 2022 WL 4587047, at *1 (Bankr. E.D. Tex. Sept. 29, 2022) (taking judicial notice of "pertinent docket entries and papers within . . . the underlying bankruptcy case."); *see also Bavely*, 2023 WL 12098401, at *5 (similar). The Trustee objects that "[t]aking judicial notice of what the Debtor set forth in the DIP Term Sheet serves no purpose because judicial notice does not allow the Court to look to this filing to establish the truth of the statements therein." Opp. at 25–26.

Tenet does not refer to that valuation as definitive evidence of the actual value of the real estate on that date. Instead, it shows that the estate believed, post-filing, that the Miami Hospitals' real estate was worth in excess of $1.12 billion, demonstrating the absurdity of the Trustee's theory that a reasonably equivalent value analysis could be conducted on this transaction based solely on the hospitals' earnings. Moreover, the estate's valuation of the real estate, showing that Steward believed it had significant value, undermines the allegation in the Amended Complaint that the Miami Hospitals were "worthless." Am. Compl. ¶¶ 21, 267.

## III.   THE AMENDED COMPLAINT FAILS TO ADEQUATELY ALLEGE INSOLVENCY

### A.   Plaintiff Is Judicially Estopped from Contesting Insolvency as to Tenet

Contrary to Plaintiff's contentions, Steward's repeated representations that it was solvent before and after the Miami transaction bind the Trustee. The Fifth Circuit in *Reed v. City of Arlington*, cited by Plaintiff, noted that judicial estoppel is "an equitable doctrine invoked by a court at its discretion to protect the integrity of the judicial process." 650 F.3d 571, 574 (5th Cir. 2011). "Because the doctrine is equitable in nature, it should be applied flexibly, with an intent to achieve substantial justice." *Id.* In the bankruptcy context, judicial estoppel should be used to

15

"bring about an equitable distribution of the bankrupt's estate among creditors holding just demand," which is precisely the situation here. *Id.*

In order to apply judicial estoppel, courts consider whether "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 272 (5th Cir. 2015). Each element is met.

Steward represented to the Delaware Chancery Court that "Steward is not on the verge of bankruptcy" and argued that "bankruptcy wasn't considered, it isn't being considered." Mot. Ex. 3, Tr. of Oral Arg. at 35:23–24, 39:16–17, *Steward Health Care Sys. LLC v. Tenet Bus. Servs. Corp.*, No. 2022-0289-SG (Del. Ch. Oct. 12, 2023). Steward submitted an affidavit of its CFO to the Court maintaining the same, and the Court, relying on Steward's representation, declined to grant Tenet's motion for partial final judgment. As a result, Tenet was unable to collect over $27 million in DPP funds that had been adjudicated to be Tenet's property under the APA. Now, Plaintiff alleges that Steward was insolvent since 2016, in a bid to unwind the APA and disallow Tenet's claim for those same DPP funds. Am. Compl. ¶ 9.

Courts routinely apply judicial estoppel on a motion to dismiss based on representations made in prior litigation. *See GSDMIdea City*, 798 F.3d at 275 ("Where the [judicial estoppel] defense appears on the face of the pleadings and in judicially noticeable facts, it may be considered in a motion to dismiss."); *In re Super. Crewboats, Inc.*, 374 F.3d 330, 335–36 (5th Cir. 2004) (directing the district court to dismiss the plaintiffs' claims as judicially estopped); *Luv n' care, Ltd. v. Jackel Int'l Ltd.*, 502 F. Supp. 3d 1106, 1108 (W.D. La. 2020) (On a motion to dismiss, a "court can [] accept the occurrences and positions taken in a prior action for judicial estoppel purposes.").

16

Further, the Court need not consider the truth of Steward's past representations to apply judicial estoppel. Steward advanced a position, obtained a ruling in reliance on that position and at Tenet's expense, and now Plaintiff seeks to take the opposite position. Plaintiff's status as the Trustee does not alter this analysis. The Trustee's attempt to disclaim any identity of interest ignores that these representations were made in furtherance of precisely the same economic interests it now purports to advance—maximizing estate value for the benefit of creditors.

Judicial estoppel is not only appropriate here, it is the equitable outcome. As the Fifth Circuit explained in *Reed*, the doctrine is designed to protect the integrity of the judicial process by preventing parties from taking inconsistent positions when it suits their interests. *See* 650 F.3d at 573–74. That principle applies with full force here. Unlike *Reed* and *In re Miller*, 347 B.R. 48, 54 (Bankr. S.D. Tex. 2006), cited by Plaintiff, this case does not involve a debtor's failure to disclose assets or omissions in bankruptcy schedules—circumstances in which courts are often cautious in applying estoppel to avoid punishing creditors for a debtor's nondisclosure. Here, Steward affirmatively represented its solvency to the Delaware Chancery Court to avoid remitting Tenet's DPP payments, only for the Trustee now to assert the opposite position to, among other things, disallow Tenet's claim for the same DPP payments. Having benefited from Steward's position in the prior litigation, the Trustee should not be permitted to disavow that position to advance a contrary theory in this proceeding.

### B.     Plaintiff Fails to Plead That the APA Caused Steward's Financial Condition

Plaintiff does not, and cannot, plead that the Miami transaction left Steward with unreasonably small assets or unable to pay its debts as they became due. Indeed, the FAC states the opposite—that Steward was in a state of financial impairment far before 2021. However, "[u]nder the Bankruptcy Code and TUFTA, the unreasonably small capital condition must be

caused by and be a result of the transfers at issue." *Acis Cap. Mgmt. LP v. Simek*, 2025 WL 1199386, at *7 (N.D. Tex. Apr. 24, 2025); *see also In re Pioneer Home Builders, Inc.*, 147 B.R. 889, 894 (Bankr. W.D. Tex. 1992) ("[T]he Debtor was having difficulty paying its debts as they came due *before* the transfers . . . The statutes require a finding that the capital remaining with the debtor as a result of the transfer is unreasonably small."); *In re Houston Drywall, Inc.*, 2008 WL 2754526, at *28 (Bankr. S.D. Tex. July 10, 2008) (concluding debtor met unreasonably small assets condition "[b]ecause Classic was left with no material unencumbered assets *after* the transfers.") (emphasis added).

Plaintiff cites no Texas or Fifth Circuit authority holding otherwise, and courts across jurisdictions have consistently held that the challenged transfer itself must be the transfer that leaves the debtor with unreasonably small assets. *See In re Palm Beach Fin. Partners, L.P.*, 598 B.R. 885, 899 (Bankr. S.D. Fla. 2019), *aff'd sub nom. Mukamal v. Nat'l Christian Charitable Found., Inc.,* 616 B.R. 189 (S.D. Fla. 2020) (concluding that "for more than two centuries," courts have required that "there must be a 'causal link' between the transfer sought to be avoided and the debtor's financial distress following the transfer"); *In re Terrific Seafoods, Inc.*, 197 B.R. 724, 736 (Bankr. D. Mass. 1996) ("I must determine whether the transfer caused Terrific to engage in business with any property remaining [being] an unreasonably small capital.").

This requirement makes sense and is good policy. "If the debtor was already in financial distress before the transfer in question such that it was foreseeably doomed to insolvency, the recipient of the transfer should not be placed under the burden of a risk it did not create." *Palm Beach Financial*, 598 B.R. at 897. Plaintiff attempts to backfill the gap in its pleadings by arguing that "although the FAC pleads that Steward had unreasonably small assets before the Tenet Transaction, the facts *presented at trial may demonstrate* that it was the $1.1 billion transfer to

18

Tenet that pushed Steward into having unreasonably small assets." Opp. at 12 (emphasis added). Speculation about what evidence might show at trial is irrelevant to whether Plaintiff met its pleading requirements under Rule 8(a). *Ferrer v. Chevron Corp.*, 484 F.3d 776, 782 (5th Cir. 2007) ("[A] 12(b)(6) inquiry focuses on the allegations in the pleadings, not whether a plaintiff actually has sufficient evidence to succeed on the merits."); *see also Cooper v. Paragon Sys., Inc.*, 2008 WL 4187942, at *4 (S.D. Miss. Sept. 5, 2008) ("Rule 12(b)(6) requires the Court to 'examine the sufficiency of the allegations based on the assertions made in the complaint, not on what the plaintiff hopes to prove.'").

Plaintiff does not allege that the Miami transaction caused Steward to be unable to pay its debts as they came due. The allegations Plaintiff points to, paragraphs 275–277 of the Amended Complaint, undercut the assertion. Opp. at 13. Plaintiff states that Steward suffered net operating losses despite receiving millions in government relief; but operating losses and negative net income are distinct from actual inability to pay debts as they become due. As the Amended Complaint alleges, Steward had access to liquidity at the time of the transaction and was able to fully finance its contribution to the purchase of the Miami Hospitals. *See* Am. Compl. ¶ 255 ("SHC System raised the $208.9 million it deposited through expensive debt from lenders.").

The Trustee's allegations show that Steward's financial position *improved* as a result of the Miami transaction. As Plaintiff acknowledges, "SHC System's internal financial statements showed a decrease in the company's net deficit between April and August 2021." Opp. at 14. The only non-conclusory allegations in the Amended Complaint regarding the impact of the Miami transaction on Steward's solvency show that it was a boon to Steward's balance sheet.

To satisfy Tex. Bus. & Com. Code § 24.005(a)(2)(B), the Plaintiff was required to plead that the APA caused it to have unreasonably small assets or that Steward intended, believed, or

reasonably should have believed that the APA would make it unable to pay its debts.  Because it did not, Plaintiff's constructive fraudulent conveyance claim should be dismissed.

## IV.   THE DISALLOWANCE CLAIM SHOULD BE DISMISSED

Plaintiff's disallowance claim should also be dismissed because, as Plaintiff acknowledges, his disallowance claim "rises or falls with the avoidance count[]." *Id.* at 28.  Since Plaintiff has failed to plead a constructive fraudulent transfer claim, its disallowance claim— "derivative of and dependent on" Plaintiff's constructive fraudulent transfer claim—must also be dismissed.  *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 122 (5th Cir. 2019); *In re IFS Fin. Corp.*, 2008 WL 4533713, at *5 (Bankr. S.D. Tex. Oct. 2, 2008) ("The Fifth Circuit holds that § 502(d) operates to enforce orders and judgments, not to disallow claims based on theoretically avoidable transfers *when no liability has been established and when no liability can be established*." (emphasis added)).  This pleading failure is sufficient to resolve this claim, relieving this Court from needing to wade into whether a disallowance claim is premature at the pleading stage, as courts from across the country have held.  *See In re PennySaver USA Publ'g, LLC*, 587 B.R. 445, 468 (Bankr. D. Del. 2018) (holding that a determination of liability is required before a disallowance claim can proceed); *Mountaineer Coal Co. v. Liberty Mut. Ins. Co. (In re Mountaineer Coal Co.)*, 247 B.R. 633, 641 (Bankr. W.D. Va. 2000) (similar).

## V.   DISMISSAL SHOULD BE WITH PREJUDICE

The Trustee does not dispute that Steward received $925 million from MPT, $100 million of net working capital, and earned over $120 million in net positive EBITDAR from the Miami transaction.  These facts doom the Trustee's claim.  As the Fifth Circuit has explained, "[d]enial of leave to amend [is] appropriate" when granting "leave would [be] futile." *Nix v. Major League Baseball*, 62 F.4th 920, 935 (5th Cir. 2023).  Amendment is futile here because undisputed facts

20

that are properly before the court establish that Steward received reasonably equivalent value, and because Steward should be judicially estopped from alleging it was insolvent as to Tenet.

No additional allegations, including those allegations previewed in Plaintiff's Opposition, could alter these dispositive realities. *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) ("Granting leave to amend is not required, however, if the plaintiff has already pleaded his best case."). Justice does not require further amendment; instead, justice militates against further dissipation of the estate's limited resources on this claim.

## CONCLUSION

For all these reasons, Tenet asks this Court to dismiss Counts Twelve and Fourteen with prejudice and to grant such other and further relief as the Court deems appropriate.

21

Dated: April 3, 2026
Houston, Texas

/s/ Anna G. Rotman, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anna G. Rotman, P.C. (TX Bar No. 24046761)
609 Main Street
Houston, Texas 77002
Telephone:       (713) 836-3600
Facsimile:       (713) 836-3601
Email:             anna.rotman@kirkland.com

- and –

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900
Email:             jsussberg@kirkland.com

- and –

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Richard U.S. Howell, P.C. (admitted *pro hac vice*)
Christopher S. Koenig (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200
Email:             rhowell@kirkland.com
                      chris.koenig@kirkland.com

*Counsel to Defendant Tenet Healthcare Corporation*

22

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 3, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Anna G. Rotman, P.C.*

23